**ELEFANTE & PERSANIS, LLP**
ATTORNEYS AT LAW
141 Hillside Pl.
Eastchester, NY 10709
(914) 961 4400

| | |
|---|---|
| **RALPH J. ELEFANTE \*** | **MARJORIE CAMPBELL.** |
| **MATTHEW N. PERSANIS** | **PARALEGAL** |

**February 2, 2026**

**VIA ECF**

The Honorable Magistrate Judge Peggy Cross-Goldenberg
United States District Court for the New York Eastern District
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    1:24-cv-04186

**Dear Judge Cross- Goldenberg:**

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), plaintiff Nuro Feratovic ("Plaintiff") and defendants Neptune Maintenance Corp., 1350 E 18th LLC, Albert Srour and Khalil Ismael(collectively, "Defendants") (Plaintiff and Defendants together, the "Parties") jointly submit this letter motion seeking approval of the negotiated Settlement Agreement and Release (the "Settlement Agreement") in the above-referenced action. This letter motion sets forth why, following the Court's analysis in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), the Settlement Agreement (attached hereto as Exhibit 1) is fair and reasonable.

    I.    **FACTUAL BACKGROUND AND PARTIES' RESPECTIVE CLAIMS AND DEFENSES**

**Plaintiff's Allegations**

Plaintiff's Amended Complaint (the "Complaint") (ECF No. 1) alleged that the Plaintiff was employed by the Defendants as a superintendent of the premises located at 1350 East St., Brooklyn, NY 11230. The Plaintiff alleged that Defendants knowingly engaged in unlawful business practices by terminating Plaintiff in retaliation for bringing forth claims of FLSA and NYLL overtime and minimum wage violations, pursuant to 29 U.S.C. §215 and NYLL §215. Plaintiff sought judgment against Defendants for remuneration, back pay, liquidated damages, and reasonable attorneys' fees, as provided for in 29 U.S.C. §216(b).

Defendants' Position

Defendants deny Plaintiff's substantive allegations. Defendants do not dispute the alleged period of employment, they vigorously deny the amount of hours worked as alleged by Plaintiff, especially pertaining to the applicable statutory. The building that Plaintiff worked at was a small four-floor residential building containing only forty-four apartments. Plaintiff's main responsibility (and the one that would have taken the most of his time) was moving garbage bags placed by residents at the front of the building to receptacles located at the rear of the building. At most, Plaintiff worked seven hours per day and certainly not any overtime hours. Given his $185 per week in wages, this more than covered minimum wage for his hours worked.[1] Plaintiff's duties neither required nor permitted him to enter residents' apartments. Defendants had contracted with an independent maintenance company to perform all necessary repairs and to address any resident service requests. In 2022, Plaintiff was doing such a poor job maintaining the garbage that Defendants received several tickets from the sanitation department. As a result, Defendants expanded the maintenance company's role to include handling the garbage and maintaining the common areas. From 2022 until his termination in 2024, Plaintiff was effectively paid to do nothing.

Further bolstering Defendants' position, they have reason to believe that Plaintiff has collected certain government benefits wherein he was required to verify the terms and conditions of his employment with Defendant (e.g. hours worked and wages paid). To the extent that his applications indicate a lower amount of hours worked and/or different amount of wages paid, Plaintiff's claims could be subjected to judicial estoppel.

As part of the Settlement Agreement, Defendants agree not to bring a claim against Plaintiff for the back rent he owes as a result of holding over in the apartment for twelve months after his employment ended. The monthly rental value was $2,700, for a total of $32,500. Had the parties chosen to continue litigation, this amount would have acted as a set-off against any potential liability. See Trustees of Local 8A-28A Welfare Fund v. Am. Grp. Administrators, 2017 U.S. Dist. LEXIS 140154, at *23 (E.D.N.Y. Aug. 28, 2017) ("setoff enables a defendant to reduce the judgment due to a plaintiff by the amount the plaintiff owes that defendant on a different claim."), *report and recommendation adopted sub nom.* Trustees of the Local 8A-28A Welfare Fund v. Am. Grp. Administrators, 2017 U.S. Dist. LEXIS 162391 (E.D.N.Y. 2017) (internal citations omitted).

---

[1] Furthermore, Defendants dispute that Plaintiff is entitled to minimum wage pursuant to the NYLL, as he was the superintendent and subject to the "janitorial exemption" as the sole resident employee. Accordingly, he was only entitled to a unit rate for each apartment in Defendants' premises during the relevant period. Given the NYLL exemption, Plaintiff would only be entitled to utilize the FLSA's minimum wage rate (i.e. $7.25) as his regular rate of pay for his federal claims, not the applicable NYLL minimum wage rate which was substantially higher.

The Settlement Agreement shall not be interpreted as an admission of liability of any kind by the Defendants.

## II. PROPOSED SETTLEMENT

After a mediation, before Joseph Debenidito, the Parties and their respective counsel continued settlement discussions and have determined that the interests of all concerned are best served by executing a release of all claims stemming from Plaintiff's employment and dismissing the instant action with prejudice on the basis of a settlement executed between the parties, under which the Defendants shall pay $100,000.00 to the Plaintiff within 30 days of approval by the court of the Settlement Agreement.

Attached as Exhibit 1 is the executed proposed Settlement Agreement between the Parties to this action for which we seek the Court's approval.

While the Parties continue to differ starkly in their respective positions as to the claims alleged in the Complaint, the Parties also recognize the risks associated with this litigation. During mediation, the Parties discussed the strengths and weaknesses of their respective positions. The attached Settlement Agreement reflects the Parties' compromise to fully and finally settle Plaintiff's claims and is the result of arms-length bargaining among the Parties. For the reasons set forth below, the Parties respectfully request that the Court enter an order approving the proposed settlement as fair and reasonable.

## III. THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE

The Parties jointly assert that the proposed settlement is "fair and reasonable" according to the analysis outlined by this Court in *Wolinsky*. The factors for this analysis include, but are not limited to: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." 900 F. Supp. 2d at 335 (internal quotation marks and citations omitted). For the reasons stated below, the proposed settlement satisfies these factors.

The plaintiff calculated his claim to be worth $100,000.00. This amount is the equivalent of two (2) year's pay. Given the factual dispute concerning the reasons for discharge of the Plaintiff, the possible proof issues and the legal questions surrounding FLSA coverage, the Parties are saving considerable resources by settling now instead of pursuing discovery through depositions and litigating to trial. The Parties all face considerable litigation risks in light of the absence of contemporaneous written records of Plaintiff's discharge. In negotiating the Settlement Agreement, Plaintiff also considered the time, expense, and risk of not being able to prove his case against the Defendants. Because the Settlement Agreement provides for immediate payment to Plaintiff, the Parties view the Settlement Agreement as a reasonable compromise in light of the potential factual disagreements.

The proposed settlement is the product of arms-length bargaining among competent counsel, with no fraud or collusion.

The amount of attorney's fees in this case are $34,766.49, this is a reasonable amount in accordance with the time spent and monies expended (see schedule of hours spent and client disbursements paid)

### IV.   CONCLUSION

The Parties respectfully request that the Court approve the Settlement Agreement in this matter as it contains fair, adequate, and reasonable terms as set forth above.

Respectfully,

*/s/ Matthew Persanis*

Matthew Persanis

Attachment

cc:   All Counsel of Record (via ECF)